Ramirez versus Statewide Harvesting & Hauling. Good morning, Mr. Stephanie. Thank you, your honor. May it please the court, counsel. My name is David Stephanie. I have the privilege of representing Statewide Harvesting & Hauling, LLC in this appeal. It's an appeal very important to the employers of H-2A workers operating in agriculture here in Florida and elsewhere. It's our position that the district court erred by characterizing the transportation of the H-2A workers to the grocery store once a week as personal errands. The nature of the H-2A... Let me make sure I understand how this works. So the overtime compensation that the plaintiffs won is for work that started... These are for trips where the trips start and they're the drivers. The trips start at the housing accommodations which are not on the farm. Correct. And they go to places like the grocery store or the bank and then back, right? Correct, your honors. The overtime... It looks to me like the district court's right. I don't know how that falls within the agriculture exception. Well, it's in part because of the regulatory requirements on Statewide Harvesting with respect to its participation as an employer. It may be that an employer is required to provide these kinds of accommodations to its employees. That doesn't mean that this work is performed by a farmer or on a farm. Well, your honor, the fundamental point we made at the district court, the magistrate agreed in the second R&R, which ultimately the district court judge reversed, is that there's precedent here, binding precedent in the Fifth Circuit under Osceola Farms with persuasive authority in a later case after Pritchard v. City of Honor. This is like the flagman in Osceola Farms, isn't it? Well, your honor, I think I've skipped over some of the facts because there really are no facts in dispute in this case, but I think it's important. The plaintiffs in this case were employed as crew foremen or crew leaders, and their responsibilities included a number of responsibilities to transport these agricultural laborers that were employed under this guest program. So the reality is both Mr. Ramirez and Mr. Santana spent the vast majority of their work weeks on farms doing agricultural work supportive of the harvesting activities that were being done by the workers themselves. Except, counsel, that our case law is quite clear that where there's an exempt component, and it's pretty clear to me that there is at least some exempt component for the work that you're talking about, but there's also a non-exempt component that destroys the exemption. That's our law on this. So it doesn't save you that they also happen to be picking and counting and transporting back and forth to the farms for the picking. The only question is the one that Judge Pryor asked, which is the act of taking from the housing which is off-farm to a location off-farm back to another, the original accommodations off-farm, could be agricultural. Judge Luck, I agree with you. The real focus of this appeal and the heart of this issue on appeal is whether or not the limited two and a half to four hours each work week that these crew foremen engaged in transporting workers to town to buy groceries and do their laundry, go to the bank, etc., whether or not that destroys the agricultural exemption that otherwise would be applicable. So our position is, for example, in the Osceola Farms case, it was the class two drivers that were bringing food to the workers because the court in Osceola Farms held as a matter of law that the ability to eat meals was a necessary thing to allow the primary activities of harvesting to take place. But the reason why it was incidental to farming, which is what you're talking about, was brought, quote, on a farm, end quote. And that's really the issue, is here for the two or four hours you're isolating and talking about, and you're right that that is what's at issue here, there was no connection that I can see or even a close proximity to, quote, on a farm, end quote. Well, again, I don't disagree that the vast majority, for the record evidence, the vast majority of of the, I'm just going to call them the trips to town, did start at the worker housing, which was 15 miles away from town. And to get back to the regulatory obligations, which, you know, sometimes and sometimes the housing is across the street from the farm, but sometimes it's hours away. Correct, Your Honor. And in this case, unfortunately, the distance of the housing being 15 miles to town where the grocery store was and the bank was necessitated transportation. The workers couldn't walk to get there. Does your argument hinge on the status of the workers being transported as H-2A agricultural workers? What would your position be if they were not, if there was no requirement that that these services be provided? Would you say the exception would apply? I think that, first of all, I don't think the the exemption, excuse me, I don't think if these were just domestic workers, not H-2A workers, there would typically not be the need for transporting workers because those workers have their own cars. Yeah, but let's say the employer wants to do it anyway. I think if they were wanting to provide that service anyway to domestic workers, just to be clear, we're changing the facts here. I think that would probably take it outside the exemption because I think it's being voluntarily provided. Then what's your authority for what I'm hearing your point is, is that we have to view the exemption through the lens of the H-2A requirements. Where's your authority for that? Well, the regulations under 20 C.F.R. Chapter 655-122 require in part, and there's a number of things that statewide has to do, but one of the things statewide has to do for its H-2A workers, and to be clear, the plaintiffs in this case, the the appellees are not H-2A workers, but what they are employed to do is supervise and transport the H-2A workers. So one of the obligations that statewide harvesting has is to provide meals to its workers, and that's a historical outflow from the way it used to be way back with Osceola Farms, etc. under the H-2 program. I just, the council, I'm having a hard time understanding that why a separate regulatory burden that Congress clearly knew about would impact the exception here. I just, it just seems to be a situation where you need to address that with Congress to say, hey, give us a break, guys. You know, you're telling us we have to provide all this stuff, and yet you're not exempting us from FLSA. I mean, that's a congressional decision. I just don't see how the fact that you're burdened with all of these extra non-FLSA regulatory, immigration regulatory obligations, has anything to do with what the statute means in this context or any other, and I think Judge Marks's question is a very good one, which is, what does it really matter if they're H-2A or not? We interpret it the same way no matter what. Well, our obligation to provide meals is one of two ways. We provide three catered meals a day, which is what was in Osceola Farms, or we provide housing that has free and convenient kitchen and cooking facilities. But what in the Fair Labor Standards Act tells us that matters? Nothing in the FLSA directly, Judge Pryor. That's a big problem. Well, it is, but I'm back to Osceola, which we've already talked about, the Brennan case versus Florida Sugarcane Growers Cooperative. So Brennan, Brennan gets you a little closer because it discusses the eating being done in close proximity rather than actually on the farm. But here, as your discussion with Judge Pryor earlier just talked about, most of the housing is not the same kind of close proximity. The way that it was close proximity was described in Brennan is they couldn't be any closer to the farm if they weren't on the farm. That's how close it was. And they said, given those unique circumstances, that's the outer limit at which will push this. We're beyond even that. And I guess where Skipper tells us that Brennan is the outer line, why would I agree or how could we agree based on the clear textual directive that it has to be on a farm to expand it beyond the close proximity of Brennan? Well, Your Honor, I would direct your attention because I think that's answered by the Reich, the Tiller helicopter case, which I know is not binding precedent on this court. But even on Reich, and I have my own problems with it, and there's probably a few, but even under Reich, there's still the end game is to the farm. They're filling up the helicopters, they're doing things to get to a farm. So even under Reich's facts, and even if I were to agree that it extended that far and that most of the activity can be done off the farm, there's still an ancillary or incidental connection to the farm here. I'm having, you know, Judge Pryor asked you the first set of questions, and we go back to it. Here, you're not starting on a farm, you're not going to a farm, and you're not ending at a farm. So even taking Reich on its face, which I don't know that we should do, but even doing that, I just don't see how we get there. Yeah, Your Honor, again, it's the comments you make about the sort of the spatial relations between where the camp was and Brennan. Yeah, that's rejected in Reich, right? Looking very carefully at the legislative history of the agricultural exemption in Reich, the panel there made it clear that the temporal or geographical relations doesn't matter because the FLSA doesn't speak to those issues. What matters is that the activity being the farming practices that the workers are engaged in. Yeah, that's my problem with Reich. Reich seems to read by a farmer or on a farm out of the statute and does not provide a fair reading of the text, as the Supreme Court says we must in its recent Encino-Motocars decision. Yeah, and Your Honor, again, I do think the fair reading is important, but if this court is not willing or doesn't believe, contrary to our arguments, that the H-2A program makes a difference, then I think there is a concern. Every single employer that is using these licensed, registered crew leaders that they have to all be under federal law are going to be liable for overtime if they're doing something like this, taking advantage. Maybe they need to talk to Congress. I understand. Okay, let's hear from Mr. Rosenberg. May it please the court, Ed Rosenberg for the appellees, Joel Santana and Jose Ramirez, and I mean, obviously there's not a ton for me to add to all this, but I did want to address, like kind of going backwards, Encino first and the reading standard, and this wasn't a shift from narrowly construed exemptions, like it was on a scale and, you know, it favored employee and now it favors employer. This was just read what it says. A fair, clear text should be read. That's all we're asking for today. Now, Encino says to, you know, if it's grammatically correct, read it that way. If like there's silence from the text, no matter how clanging, then you can't read it into the text, and, you know, if it's clear that way, then read it that way. Anyway, so there's only, I think in a lot of the briefs, it was a tendency to make this a complicated case, and it just doesn't read like that. This is a nuanced case, but not a complicated one. There's only two exemptions. There's primary and there's and even back to the 40s in farmers' reservoirs, that it's work, actual farm work. It's the actual putting the seeds in the ground. It's actually watering the seeds, and yes, even harvesting the seeds, but once you're not doing that actual farming work, well, then you have to rely on the secondary agriculture, and so, I mean, we talked about it, like my guys, this is only for the Saturday. This is the time they're not doing anything with the farms. This is an off day for them, and they're, I mean, not off because they're working, but they're not going to the farms at all, and they're taking them these four hours every weekend that brings us over, we're way over 40 at this point. It's nowhere near a farm. Anyway, so secondary agriculture, which is pretty clear in the Supreme Court, in this circuit, and the text is either on a farm or by a farmer or on a farm in conjunction with agriculture. Statewide admits it's not a farm. Yeah, yeah, I think that's been clear the whole time, so we have to be literally on the farm, and there's three main cases in this. There's Bryant, there's Brennan, and two and a half, Teller, that talk about this, but none of them really bring it off the farm. They extended a tiny bit, but you can't, Brennan does say it close proximity. Oh yeah, and the reason I'm saying it's extended and not taken off is because Brennan had four dormitories, three of which were literally on the farm, and I guess the farm ran out of space, so they bought the parcel next to them and put the fourth one right there, and they're like, like you said earlier, Jeff, look, that they couldn't physically fit it on the farm anymore, and only because the workers in that case were actually part of a pre-H2A program, a work program, and they were the ones cooking and cleaning, but then that food was literally brought again to the people on the farm. There's a connection, just like in WURTS, and Brennan also says very, very clearly that the cooking and cleaning is not primary agriculture and never has been primary agriculture, and so we move to WURTS, which is actually, you know, previous in time, and I liken, you know, I liken my clients to both the flagmen and the mechanics, and the mechanics kind of take us in a till or two, but the mechanics, if they're working on machinery that while they're on the farm, that's exempt, but if they're working on machinery that is not on the farm, even if that machinery is going to the farm, if they're working off the farm, then that's not exempt, and in Tiller, it's pretty much the same thing. What was not appealed is that the mechanics are non-exempt. The guys who are working on the helicopter are not exempt because they're working on the helicopter off the farm. Yes, all the spray, you know, I don't agree with how Tiller was decided, but I can make the leap that the actual spray, so that the pesticides and the insecticides, they were the product that was being sprayed on the farm to do primary agriculture. I, you know, it's off the farm, but I at least get that. That's what's being sprayed, but in Tiller, the mechanics who were working on the helicopter itself, not exempt because the helicopter is not the product. The workers, in my product, and the food here is just, they're helping them get the food, but the food isn't the product, or my workers keeping them alive with food, that's not the product. That's just the means of getting to where you're going, just like the helicopter isn't. But again, I don't like Tiller, but I don't think the leap of having, basically giving it all the benefit of the doubt, I don't think the leap of having the pesticide actually go to the farm is the worst thing in the world, in my case. Now, so yeah, so back to Encino, I don't want this court to be making law today, like I don't want the definition to become on a farm, like by a farmer, on a farm, or in conjunction with, because that's not grammatically coherent, that's not what the law is saying. It's just one or the other, there's not a third option. So you have to be connected to the farm, you have to be on the farm. And essentially, that's the other, the appellants are, the appellant is trying to say otherwise, that if it has, you know, anything to do with farming, you know, basically just the 213b12 definition, employees engaged in farming, you know, without the, what, sorry, employees engaged in agriculture, without actually looking into the definition of agriculture, I think that's what they want, and you can't do that. You can't ignore a definition according to Encino and, you know, what we all know. So I'm not asking for the, oh sorry, what I think that the other side is also trying to do is, I think it was made clear earlier, too, because it's the H-2A program, then that somehow makes it agriculture. And there's just nothing that says that. Encino says you can't read that into the law, and I'm not trying to. I mean, also they're trying to, it seems like they kind of want the word, the words on the farm to also include the words off the farm, which again, according to Encino, you can't do that. I'm not asking the court to make any assumptions, inferences, or any kind of connections that aren't in the text. And I just want it to be read fairly, and I know I have way too much time left, but I figure I will rest now and yield that time. Okay, thank you, Mr. Rosenberg. Thank you, Mr. Rosenberg. Mr. Stephanie, you have three minutes. Thank you, Your Honor. I think the only other points that we would bring to the court's attention is the fact that the Department of Labor, in its own interpretive guidance on the agricultural exemption, which is part of Chapter 780 of 29 CFR, makes it clear that when employees of a contractor have a minor or incidental part of their work responsibilities take place off the farm, that that does not make unavailable the agricultural exemption. And specifically, that's in Chapter 20, small letter B01 of their case law, is clear that insofar as their activities, the compensable activities we're talking about are off the farm, it does make a difference. If the conclusion is that the transportation from the housing to the grocery store is non-exempt work, I would agree, Judge. I think the fact that two and a half to four hours a week would otherwise take these people out of the applicability of the agricultural exemption, I think it's a narrow reading of the statute. I think it's a technical reading, like Brennan said the Secretary was doing in that case. In this case... Well, the real question is, is it a fair reading? Is it, pardon me? Is it a fair reading? That's true. That's true. Fair is the better test at this point under encino harvesting. All else I would cite is the regulation itself with respect to employment and practices on a farm, which is 29 CFR 780.136 also reiterates the fact that a minor incidental part of the work of such an employee occurs off the farm will not affect the applicability of the exemption. Yeah, but this is not minor or incidental. Four hours in a 40-hour work week on a weekend on your off time cannot be seen as minor or incidental. This isn't, in other words, hey, I got to go grab my toothbrush in the middle of the day, or I got to go grab my sack of lunch and then come back to the farm. That's not what we're talking about here, right? I would agree. And again, I think the better reading is the Reich case with Tiller Helicopter, which sort of disregards the temporal nature of the activity and really connects the activity with the farming practices. In this case, the work of the harvesting, the lifting of the harvested fruit and blueberries and all those things that the plaintiffs in this case or appellants in this appellees in this case, excuse me, were employed to do. Okay, Mr. Stephanie, we have your case. We thank you for your argument this morning. Thank you, Joe. Thank you. That finishes our calendar for the week. We are adjourned for the week. Thank you.